UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY on behalf of itself and certain of its affiliated property and casualty insurance companies from time to time, | : : : : : : | No. _____ |
| Petitioner, | : : |  |
| v. | : : |  |
| GLOBAL CORE INSURANCE SPC on behalf of Horizon Preferred SP, | : : : |  |
| Respondent. | : : |  |

## PETITION TO COMPEL ARBITRATION

Petitioner Hartford Fire Insurance Company on behalf of itself and certain of its affiliated property casualty insurance companies from time to time ("Hartford"),[1] by and through its attorneys, Steptoe & Johnson LLP and Reardon Scanlon, brings this Petition pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, to compel Respondent Global Core Insurance SPC on behalf of Horizon Preferred SP ("Global Core") to participate in arbitration pursuant to the FAA, 9 U.S.C. § 1, et seq.  Petitioner Hartford alleges as follows:

---

[1] The affiliated companies include but are not limited to Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company, Hartford Underwriters Insurance Company, Hartford Insurance Company of Canada, Hartford Insurance Company, Ltd., Hartford Insurance Company of Connecticut, Hartford Insurance Company of the Southeast, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, Hartford Lloyd's Insurance Company, Nutmeg Insurance Company, Pacific Insurance Company, Ltd., Property & Casualty Insurance Company of Hartford, Sentinel Insurance Company, Ltd., Trumbull Insurance Company, and Twin City Fire Insurance Company.

## NATURE OF THE ACTION

1. Hartford and Global Core are parties to four reinsurance agreements pertaining to certain workers' compensation risks (collectively, the "Reinsurance Agreements").[2] Under the Reinsurance Agreements, Global Core provides reinsurance coverage to Hartford for the first $500,000 per loss occurrence under workers' compensation policies issued by Hartford.

2. The Reinsurance Agreements require Global Core to provide required security for the Reinsurance Agreements, which is utilized, among other things, to pay claims. Global Core has failed to provide the required security in an amount equal to at least $22,738,571.00, as of September 30, 2022. Hartford has repeatedly sought to collect the deficient security amount from Global Core, but to no avail.

3. Disputes under the Reinsurance Agreements must be arbitrated in Hartford, Connecticut absent mutual agreement to another location. Hartford demanded arbitration in Hartford, Connecticut on October 26, 2022, but Global Core has not acknowledged its obligations to arbitrate. Accordingly, Hartford seeks for this Court to order Global Core to arbitrate the dispute under the Reinsurance Agreements.

## PARTIES, JURISDICTION, AND VENUE

4. Petitioner Hartford is a Connecticut corporation, with its principal place of business in Hartford, Connecticut.

5. Upon information and belief, Respondent Global Core is organized under the laws of the Cayman Islands, with its principal place of business in Grand Cayman, Cayman Islands.

---

[2] "Simply put, '[r]einsurance is a contract by which one insurer insures the risks of another insurer.' Under a reinsurance contract, the original insuring entity (the 'reinsured') transfers, or "cedes," part or all of its risk under its policy of insurance to another entity (the 'reinsurer')." *See N. River Ins. Co. v. Ace Am. Reinsurance Co.*, 361 F.3d 134 (2d Cir. 2004) (quoting *People ex rel. Cont'l Ins. Co. v. Miller*, 177 N.Y. 515, 70 N.E. 10, 12 (1904)).

6. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. This is a dispute between citizens of a State and a foreign state, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

7. Venue is proper in this judicial district because the parties agreed to arbitrate disputes in Hartford, Connecticut. *See* 9 U.S.C. § 4.

## FACTUAL ALLEGATIONS

**The Reinsurance Agreements**

8. Hartford and Global Core, an unauthorized reinsurer domiciled in the Cayman Islands, are parties to the following Reinsurance Agreements for certain workers' compensation risks:

   a. Treaty Reinsurance Agreement between Atlantic Gateway International (SAC), Ltd. on behalf of Horizon Preferred Segregated Account and Hartford Fire Insurance Company, effective April 10, 2017 to April 10, 2018, and novated to Global Core ("2017-18 Reinsurance Agreement") (attached as Exhibit A);

   b. Treaty Reinsurance Agreement between Atlantic Gateway International (SAC), Ltd. on behalf of Horizon Preferred Segregated Account and Hartford Fire Insurance Company, effective April 10, 2018 to April 10, 2019, and novated to Global Core ("2018-19 Reinsurance Agreement") (attached as Exhibit B);

   c. Treaty Reinsurance Agreement between Horizon Preferred SP of Global Core Insurance SPC and Hartford Fire Insurance Company, effective April 10, 2019 to April 10, 2020 ("2019-20 Reinsurance Agreement") (attached as Exhibit C); and

   d. Treaty Reinsurance Agreement between Global Core Insurance SPC on behalf of Horizon Preferred SP and Hartford Fire Insurance Company, effective

April 10, 2020 to April 10, 2021 ("2020-21 Reinsurance Agreement") (attached as <u>Exhibit D</u>).

9. The 2017-18 Reinsurance Agreement and the 2018-19 Reinsurance Agreement were novated to Global Core pursuant to the Novation, Substitution, Assumption and Release Agreement between Hartford Fire Insurance Company, Atlantic Gateway International (SAC), Ltd. on behalf of Horizon Preferred Segregated Account, and Global Core Insurance SPC for and on behalf of Horizon Preferred Segregated Portfolio, effective December 31, 2019 ("Novation Agreement") (attached as <u>Exhibit E</u>).  Atlantic Gateway International novated, assigned, and transferred all of its rights, title, interests, duties, obligations and liabilities under the 2017-18 and 2018-19 Reinsurance Agreements to Global Core, and Global Core became the substitute counterparty to those agreements.

10. There are no material differences in the terms of the Reinsurance Agreements for purposes of the present petition.[3]

11. The Reinsurance Agreements each contain an identical Article 13 requiring arbitration for disputes under the Reinsurance Agreements.  *See, e.g.*, Exhibit A, Article 13.  Article 13 provides: "Should an irreconcilable difference of opinion arise as to the interpretation of this Agreement or the rights of the parties with respect to any transaction involved herein, it is hereby mutually agreed that, as a condition precedent to any right of action hereunder, such difference ***shall be submitted to arbitration***."  *See, e.g.*, Exhibit A, Article 13.1 (emphasis added).

---

[3] For ease of reference, this Petition cites to the pertinent agreement provisions in Exhibit A but the provisions are the same in Exhibits B through D.

12. Article 13 further provides that "[a]ny such arbitration shall take place in Hartford, Connecticut, unless the parties in interest mutually agree upon some other location." *See, e.g.*, Exhibit A, Article 13.4.

13. Article 13 also specifies the procedures for selecting party appointed arbitrators (13.2), selecting an umpire (13.3), compensating the arbitrators (13.4), and issuing a decision that may be confirmed in court (13.5). The arbitrators "shall interpret the Agreement as an honorable engagement and not as merely a legal obligation" and they are "relieved of all judicial formalities and may abstain from following the strict rules of law." *See, e.g.*, Exhibit A, Article 13.6.

14. The Reinsurance Agreements also each contain a "Governing Law & Service of Suit" Clause. *See, e.g.*, Exhibit A, Article 18. It provides:

> This article shall not be read to conflict with or override the obligations of the parties to arbitrate their disputes as provided for in Article 13, Arbitration. This Article is intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award, not as an alternative to the Arbitration Article for resolving disputes arising out of this Agreement.
>
> In the event of the failure of the Reinsurer to perform its obligations hereunder, except as otherwise provided by the Arbitration Clause, Reinsurer agrees that it will submit to the jurisdiction of a state or federal court of competent jurisdiction within the United States. It is further agreed that service of process in such suit may be made upon the party named in Article 19 and that in any suit instituted, Reinsurer will accept and abide by the final decision of such court.
>
> This Agreement shall be construed and interpreted in accordance with the laws of the State of Connecticut, USA.

*See, e.g.*, Exhibit A, Article 18.

15. The premiums paid by the insureds, along with the required security, fees, and other amounts to be paid by Global Core, are maintained in a trust account, as per Article 8.1 of

the agreements. The current trust for the Reinsurance Agreements is with Fifth Third Bank with Hartford as the beneficiary and Fifth Third Bank as the trustee. The funds in the trust are utilized to pay claims and fees under the Reinsurance Agreements. *See, e.g.*, Exhibit A, Article 7.

16. Article 8 of the Reinsurance Agreements, Security, provides that Global Core must provide Required Security for Obligations under the Agreement and the Program Gap (capitalized terms as defined in the Agreement). *See, e.g.*, Exhibit A, Article 8. The "amount of Required Security is adjustable and Company [Hartford], in its sole discretion, shall adjust the security requirements." *See, e.g.*, Exhibit A, Article 8.1.

17. The Security Article further provides that "increases in security for the Obligations and the Program Gap will be provided to Company [Hartford] within thirty (30) calendar days of Company's [Hartford's] request." *See, e.g.*, Exhibit A, Article 8.1.

**The Dispute**

18. On April 1, 2022, Hartford requested an increase in the Required Security pursuant to Section 8.1 of the Reinsurance Agreements. Global Core did not provide payment of the security amount or a proposed plan to cure the contractual breach.

19. Hartford repeatedly followed-up with Global Core from May through July 2022 to cure the deficiency, but to no avail.

20. On August 15, 2022, Hartford requested again that Global Core cure the security deficiency. Global Core did not respond, nor did it provide payment of the overdue amount or a proposed plan to cure the contractual breach.

21. While Global Core remained deficient with respect to the Required Security, there were nonetheless sufficient remaining funds in the trust to pay claims and service fees as of August 15, 2022.

22. That is no longer true. As of September 30, 2022, the trust lacks sufficient funds to pay the full amount of the Loss and Service Fees valued as of September 30, 2022. The deficiency in trust funds required Hartford to pay $420,132.70 of its own funds to pay claims that Global Core agreed to fund under the Reinsurance Agreements.

23. As of September 30, 2022, the total Required Security deficiency is $22,738,571.

24. On October 26, 2022, Hartford demanded arbitration with Global Core to resolve the Required Security dispute. *See* Exhibit F.

25. Given the need for immediate action due to Global Core's prior failures to respond meaningfully to Hartford's demands for additional security which in turn led to the depletion of all funds in the trust account (except for amounts left by Hartford to ensure satisfaction with bank minimums), Hartford requested that Global Core confirm in writing within five (5) days that it would participate in the arbitration and it would appoint its arbitrator within the thirty-day (30) period outlined in the Arbitration Article of the Reinsurance Agreements. *See* Exhibit F; *see, e.g.*, Exhibit A, Article 13.2.

26. To date, Global Core has not confirmed that it will participate in the arbitration or that it will timely appoint its arbitrator.

## **FIRST CAUSE OF ACTION**

27. Hartford repeats and realleges the allegations set forth in paragraphs 1 through 26 above as it fully set forth herein.

28. The Reinsurance Agreements are contracts involving commerce.

29. The Reinsurance Agreements require arbitration when "an irreconcilable difference of opinion arise as to the interpretation of this Agreement or the rights of the parties

with respect to any transaction involved herein." The parties have such a dispute with respect to the amounts outstanding under the Reinsurance Agreements.

30. Global Core must arbitrate the disputes regarding outstanding amounts owed to Hartford under the Reinsurance Agreements. Global Core has not agreed to arbitration and has also not cured its contractual breaches by paying the deficient security amounts, despite repeated requests to do so for months.

31. Pursuant to 9 U.S.C. § 4, and in accordance with the Reinsurance Agreements, this Court has authority to compel Global Core to arbitrate its disputes with Hartford in this judicial district. Accordingly, Hartford respectfully requests that the Court compel arbitration under the Arbitration Agreements.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner Hartford respectfully requests that the Court (1) compel Respondent Global Core to arbitrate in this judicial district the disputes under the Reinsurance Agreements relating to outstanding amounts owed by Global Core; (2) require Global Core to post security in the amount of $22,738,571 pursuant to Conn. Gen. Stat. Ann. § 38a-27 when it responds to this Petition; and (3) grant such other and further relief as the Court deems just and proper. No prior application for relief sought herein or for similar relief has been made.

Dated: November 1, 2022

Reardon Scanlon
By: /s/ *Katherine A. Scanlon*

Katherine A. Scanlon (Fed. Bar No. ct18129)
James J. Reardon, Jr. (Fed. Bar No. ct13802)
Reardon Scanlon
45 South Main Street, Suite 305
West Hartford, CT 06107
860-955-9451
Katherine.Scanlon@reardonscanlon.com

Sarah D. Gordon (*pro hac vice* forthcoming)
STEPTOE & JOHNSON LLP

1330 Connecticut Ave NW
Washington, DC 20036
202-429-8005
sgordon@steptoe.com
*Attorneys for Petitioner Hartford Fire Insurance Company*